**FILED**

**NOVEMBER 9, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## CHICAGO DIVISION

**07 C 6384**

| | |
|---|---|
| ALLISON KIDDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHNSON & JOHNSON, JOHNSON & | ) CIVIL ACTION NO. _____ |
| JOHNSON PHARMACEUTICAL | ) |
| RESEARCH & DEVELOPMENT, L.L.C. | ) JURY TRIAL DEMANDED |
| f/k/a R.W. JOHNSON | ) |
| PHARMACEUTICAL RESEARCH | ) JUDGE _____ |
| INSTITUTE, ORTHO McNEIL | ) |
| PHARMACEUTIAL, INC. and | ) |
| ORTHO McNEIL, INC., | ) |
| | ) |
| Defendants. | ) |

JUDGE KENNELLY
MAGISTRATE JUDGE COX

### COMPLAINT

COMES NOW Plaintiff ALLISON KIDDER by and through her undersigned counsel, Kent M. Lucaccioni of KENT M. LUCACCIONI, Ltd., complaining of JOHNSON & JOHNSON, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. f/k/a R.W. JOHNSON PHARMACEUTICAL RESEARCH INSTITUTE, ORTHO-MCNEIL PHARMACEUTICAL, INC. and ORTHO McNEIL, INC. (collectively referred to as "Defendants" herein), and for cause of action would show the Court as follows:

### I.

### OVERVIEW

1.    Plaintiff brings this action to recover for personal injuries suffered as a direct and proximate result from her use of the Ortho Evra (norelgestromin/ethinyl estradiol transdermal

1

system) birth control patch (hereinafter referred to as "Ortho Evra") designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold by Defendants herein.

## II.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a resident of Chicago, Cook County, Illinois, and Defendants are New Jersey corporations with their principal places of business in the State of New Jersey.

3.    Defendants are subject to the personal jurisdiction of this Court because Plaintiff's claims arise out of Defendants' business transactions and tortious acts in the State of Illinois and by virtue of Defendants' substantial, continuous and systematic contacts within the State of Illinois, unrelated to Plaintiff's claims.

4.    Venue is proper in this District pursuant to 28 U.S.C. §1391(a), as Plaintiff obtained, purchased and used the prescription medication that forms the basis of this lawsuit in this Federal District of Illinois, Plaintiff resides within this District, Defendants do substantial business in the State of Illinois and within this Federal District, and at all times relevant hereto, Defendants developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce the aforementioned prescription drug Ortho Evra.

## III.

## PARTIES

5.      Plaintiff ALLISON KIDDER is a natural person and a resident of Chicago, Cook County in the State of Illinois.

6.      Defendants are the manufacturers, marketers, wholesalers, distributors and/or sellers of the Ortho Evra birth control patch and are identified as follows:

A.      Defendant Johnson & Johnson is a New Jersey corporation having its principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.  At all times material hereto, the Defendant, Johnson & Johnson was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or selling Ortho Evra.  Process may be served on defendant Johnson & Johnson by serving its registered agent, C. T. Corporation System, at 820 Bear Tavern Road, Suite 305, Trenton, New Jersey 08268.

B.      Defendant, Johnson & Johnson Pharmaceutical Research & Development, L.L.C. f/k/a R.W. Johnson Pharmaceutical Research Institute (hereinafter referred to as Johnson & Johnson Pharmaceutical Research & Development, L.L.C.) is a limited liability company organized under the laws of New Jersey, with its principal place of business at 920 Route 202 South, Raritan, New Jersey 08869.  At all times material hereto, the Defendant, Johnson & Johnson Pharmaceutical Research & Development, L.L.C. f/k/a R.W. Johnson Pharmaceutical Research Institute, was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or selling Ortho Evra. Johnson & Johnson Pharmaceutical Research & Development, L.L.C. is part of the Defendant Johnson & Johnson's "Family of

3

Companies." Upon information and belief, the Defendant Johnson & Johnson Pharmaceutical Research & Development, L.L.C. was formed by a 2001 merger of the Janssen Research Foundation and the R.W. Johnson Pharmaceutical Research Institute. Process can be served on Defendant Johnson Pharmaceutical Research Institute & Development, L.L.C. by serving a copy of the Summons along with a copy of this Complaint on Johnson & Johnson Pharmaceutical Research & Development, L.L.C.'s registered agent, Johnson & Johnson, at 920 Route 202 South, Raritan, New Jersey 08869;

C.    Defendant, Ortho-McNeil Pharmaceutical, Inc. is a Delaware corporation which has its principal place of business at 1000 U.S. Highway 2002 South, Raritan, New Jersey 08869-0602. At all times material hereto, the Defendant Ortho McNeil Pharmaceutical, Inc. was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Ortho Evra. Process may be served on defendant Ortho-McNeil Pharmaceuticals, Inc. by serving a Summons along with a copy of this Complaint on Ortho-McNeil Pharmaceuticals, Inc.'s chief executive officer at Ortho-McNeil Pharmaceuticals, Inc., 1000 U.S. Highway 202 South, Raritan, NJ 08869; and

D.    The Defendant, Ortho-McNeil, Inc. is a Delaware corporation which has its principal place of business at 1000 U.S. Highway 2002 South, Raritan, New Jersey 08869-0602. At all times material hereto, the Defendant Ortho-McNeil, Inc. was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Ortho Evra. The Defendant Ortho-McNeil Pharmaceutical, Inc., now known as Ortho-McNeil, Inc. was and are wholly owned subsidiaries of the Defendant, Johnson & Johnson. Process may be served on defendant Ortho-McNeil, Inc. by serving a Summons along with a copy of this Complaint on Ortho-McNeil Inc.'s chief executive officer at Ortho-McNeil, Inc., 1000 U.S.

4

Highway 202 South, Raritan, NJ 08869.

## IV.

## <u>FACTUAL ALLEGATIONS</u>

**A.    ORTHO EVRA HISTORY**

7.    Ortho Evra is a transdermal contraceptive patch designed to prevent pregnancy.

8.    Ortho Evra  is the first and only transdermal contraceptive patch on the market in the United States.

9.    At or about the time of introducing Ortho Evra on the market, Defendant OrthoMcNeil Pharmaceutical, Inc.'s patent for its best-selling oral contraceptive, Ortho Tri-Cyclen, was about to expire.  Thus, it was a priority for Defendant Ortho McNeil Pharmaceutical, Inc. to obtain FDA approval of Ortho Evra  so that it would offset the lost income previously realized from Ortho Tri-Cyclen.

10.    Defendants, by and through their agent(s), servant(s) and/or employee(s), filed a New Drug Application ("NDA") for Ortho Evra  with the FDA on or about December 21, 2000, denoted as NDA 21-180 ("NDA" herein).  The NDA states that the intended use of Ortho Evra  is for the prevention of pregnancy and asserts that Ortho Evra is safe for such use.

11.    The NDA failed to include adequate safety data.  Defendants knew or should have known at all material times that the risk of developing and/or dying from a blood clot is three times as high among women who use Ortho Evra compared to women who use traditional oral contraceptive pills.

12.    Prior to the FDA's approval of the NDA, the only studies specifically examining Ortho Evra's effect on humans were Phase III clinical trials funded and conducted by Defendants. In the aforesaid clinical trials, Ortho Evra caused or contributed to cases of pulmonary embolism and

other venous thrombotic injuries. The incidence of embolisms and thrombotic injuries in said clinical trials was approximately six times greater than the incidence of such events in a widely used class of oral contraceptives using the hormone levonorgestrel.

13.    In recognition of the above-referenced risks, the FDA Medical Officer expressed serious safety concerns regarding Ortho Evra when he stated the following:

> Post-marketing surveillance for DVT (Deep Vein Thrombosis) and PE (Pulmonary Embolism) events will be important, as there are potential serious adverse risks (with two cases of pulmonary emboli in the clinical trials) with this new delivery system for contraception...

Ortho Evra, New Drug Application 21-180 Medical Officer's Review (Nov. 20, 2001).

14.    The same FDA Medical Officer's Review further stated that:

> [t]he reviewer's primary concern...is the possible increased risk of DVT and/or PE associated with the transdermal delivery of norelgestromin (17deacetyl-norgestimate) for combination hormonal contraception [and wondered if] the transdermal delivery system and the relatively steady-state serum hormone concentrations for 17d-norgestimate and ethinyl estradiol [was] a factor in the two cases of pulmonary emboli seen in the three pivotal studies.

15.    Notwithstanding the above, on or about November 20, 2001, the FDA initially approved Ortho Evra for use as a contraceptive to prevent pregnancy.

16.    Defendants marketed Ortho Evra aggressively and yet, at all material times hereto, they failed to properly disclose safety hazards associated with Ortho Evra.

17.    The Ortho Evra package insert states that "the contraceptive patch is expected to be associated with similar risks" to that of other hormonal contraceptives, including birth control pills, injectables, implants and the vaginal ring. In the same package insert, however, Defendants state that the safety information they provide to consumers is "derived primarily from studies of birth control pills."

18.    The Ortho Evra package insert further states that while Ortho Evra and other combination hormonal contraceptives contain both an estrogen and a progestin, "[t]here is no epidemiological data available to determine whether safety and efficacy with the transdermal route of administration would be different than the oral route."

19.    The package insert further states as follows:

a.    "[i]t is unknown if the risk of venous thromboembolism with Ortho Evra use is different than with use of combination oral contraceptives"; and

b.    "[i]t is unknown whether Ortho Evra is distinct from other combination hormonal contraceptives with regard to the occurrence of venous and arterial thrombosis."

20.    The Ortho Evra package insert is misleading in that the package insert suggests that the risks associated with Ortho Evra are equivalent to the risks associated with oral contraceptives. This is in direct conflict with data collected in Defendants' clinical studies.

21.    Ortho Evra was first made available for public use by prescription in April 2002. In the 17-month period from April 2002 through September 2003, the FDA logged 9,116 reports of adverse reactions to Ortho Evra. During the 12-month period from May 1, 2002 through April 20, 2003, the FDA received 46 reports of serious clot-related injuries or deaths that were primarily attributable to Ortho Evra use.

22.    By way of comparison, the leading contraceptive, Ortho Tri-Cyclen, which has six times as many users as Ortho Evra , only generated 1,237 adverse event reports to the FDA during the six-year period from November 1997 through September 2003. From approximately May 1, 2002 through April 20, 2003, the FDA only received 17 adverse events related to Ortho Tri-Cyclen for injuries or deaths from blood-clots and related brain injuries, deep vein thromboses, pulmonary

embolisms, strokes and/or heart attacks.

23.     Notwithstanding the well-documented safety hazards associated with Ortho Evra, Defendants have never conducted any meaningful post-market surveillance as suggested in the above-referenced FDA Medical Officer's Review.

24.     At one point in time, Defendants planned a clinical trial that was designed to test the safety of Ortho Evra versus oral hormonal birth control pills. However, that clinical trial was never conducted because Defendants did not believe that Ortho Evra would fare well in the safety comparison.

25.     On November 10, 2005, Defendants announced a change in the Ortho Evra warning label to disclose that women who use Ortho Evra are exposed to approximately 60% more estrogen than those using an oral hormonal contraceptive. This greater exposure results in a significantly higher risk for blood clots and other serious thrombotic events, like strokes and pulmonary emboli.

26.     The increased exposure to estrogen in Ortho Evra makes it comparable to high-dose-estrogen forms of oral contraceptives (those with more than 50 mg. of estrogen) that were removed from the market in 1988.

27.     At all times material hereto, Defendants, by and through their agents, servants and/or employees, failed to adequately warn physicians and consumers, including Plaintiff, that the risk of developing blood clots, pulmonary emboli, strokes, heart attacks and/or deep vein thrombosis from Ortho Evra use is significantly higher than from oral contraceptives.

28.     At all times material hereto, Defendants knew or should have known that the risks of Ortho Evra included severe and life threatening complications and side effects, yet they failed to provide adequate instructions or warnings of same to Ortho Evra consumers and prescribing

physicians.

29.     At all times material hereto, the Defendants failed to comply or properly comply with Federal law in connection with the subject product.

**B.     PLAINTIFF'S USE OF ORTHO EVRA**

30.     Plaintiff was prescribed and used Ortho Evra for the prevention of pregnancy.

31.     Prior to using Ortho Evra , Plaintiff was in good health and was able to perform all of her usual and customary activities.

32.     Plaintiff ALLISON KIDDER was prescribed and used the subject product from March 30, 2007 through approximately July 8, 2007.

33.     On or about July 8, 2007,  at 27 years of age, Plaintiff was hospitalized for 5 days after having been diagnosed with a stroke.  Plaintiff immediately was instructed to discontinue use of the Ortho Evra birth control patch.

34.     Plaintiff underwent Heparin and Coumadin therapy while in the hospital and was told use anticoagulant Coumadin therapy for an additional six months after discharge from the hospital.  Also, because of her stroke, Plaintiff is prevented from ever again using any form of estrogen or hormone based birth control or menopausal hormone replacement therapy.

35.     Had the Defendants properly disclosed the risks associated with the subject product, Plaintiff would not have used it.

**V.**

**CAUSES OF ACTION**

**COUNT I:  STRICT PRODUCT LIABILITY
DEFECTIVE DESIGN**

36.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every

allegation set forth in the preceding paragraphs and further alleges as follows.

37.    At all times material to this action, Defendants were responsible for designing and developing Ortho Evra. Ortho Evra was expected to reach, and did reach, consumers in the State of Illinois and throughout the United States, including Plaintiff, without substantial changes in the condition in which it was sold.

38.    Ortho Evra is defective in its design and/or formulation in that it is unreasonably dangerous to consumers when put to a reasonably anticipated use.

39.    Ortho Evra was designed and developed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following particulars:

      a.    When placed in the stream of commerce, Ortho Evra contained unreasonably dangerous design defects and was not reasonably safe for its anticipated use, subjecting Plaintiff to risks that exceeded the benefits of Ortho Evra, including, but not limited to, the risks of developing blood clots, pulmonary emboli, strokes, heart attacks and/or deep vein thrombosis, each causing serious, crippling injuries, and even death in an unacceptably high number of its users;

      b.    When placed in the stream of commerce, Ortho Evra was defective in design and formulation, making the use of Ortho Evra more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other contraceptive medications and similar drugs on the market for the prevention of pregnancy;

      c.    Ortho Evra's design defects existed before it left the control of the Defendants;

      d.    Ortho Evra was insufficiently tested; and

      e.    Ortho Evra was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Plaintiff, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants liable to Plaintiff, individually and collectively.

40.    In addition, at the time Ortho Evra left the control of Defendants, there were practical

and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the product's utility.

41.    As a direct and proximate result of Ortho Evra's defective design and condition, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT II:  STRICT PRODUCT LIABILITY MANUFACTURING DEFECT

42.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

43.    At all times material to this action, Defendants were engaged in the business of manufacturing Ortho Evra.

44.    Ortho Evra  was expected to reach, and did reach, consumers in the State of Illinois and throughout the United States, including Plaintiff herein without substantial change in the condition in which it was sold.

45.    Ortho Evra was defective in its manufacture and construction in ways which include, but are not limited to, one or more of the following particulars:

        a.    Ortho Evra was not made in accordance with product specifications and/or

11

performance standards;

b.    Ortho Evra's manufacturing defects occurred while the product was in the possession and control of the Defendants; and

c.    When placed in the stream of commerce, Ortho Evra  contained manufacturing defects which rendered the product unreasonably dangerous and unfit for its anticipated use.

46.    As a direct and proximate result of Plaintiff's use of Ortho Evra as manufactured by Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT III:  STRICT PRODUCT LIABILITY
## FAILURE TO WARN

47.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

48.    Defendants, in the course of their business, were responsible for the design, manufacturing, labeling, distribution and marketing of Ortho Evra.

49.    Ortho Evra  was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks and reactions associated with Ortho Evra, including but not limited to its propensity to cause blood clots, pulmonary emboli, strokes, heart attacks, deep vein thrombosis, and other serious injuries and side effects, notwithstanding Defendants' knowledge of an increased risk of these injuries and side effects over other forms of contraception.

50.    Ortho Evra was unreasonably dangerous when put to a reasonably anticipated use, i.e., contraception, without knowledge of its dangerous characteristics.

51.    Plaintiff was prescribed and used Ortho Evra in a manner reasonably anticipated.

52.    Defendants, as manufacturers and/or distributors of Ortho Evra, are held to the level of knowledge of an expert in the field.

53.    The warnings that were given by Defendants were not accurate or clear and/or were ambiguous. Defendants' warnings failed to properly warn physicians of the increased risk of blood clots, pulmonary emboli, strokes, heart attacks, deep vein thrombosis and other serious injuries and side effects.

54.    Plaintiff, individually and through her prescribing physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

55.    Plaintiff could not have discovered any defect in Ortho Evra through the exercise of reasonable care. Defendants had a continuing duty to warn Plaintiff of the dangers associated with Ortho Evra. Had Plaintiff received adequate warnings regarding the risks of Ortho Evra, she could have chosen not to use it.

56.    As a direct and proximate result of Ortho Evra's defective and inadequate warnings, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

13

## COUNT IV:  BREACH OF IMPLIED WARRANTIES
## OF FITNESS AND MERCHANTABILITY

57.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

58.     Defendants designed, manufactured, marketed, distributed, supplied and/or sold Ortho Evra to consumers, including Plaintiff, for use as a contraceptive.

59.     Defendants had knowledge that consumers, including Plaintiff, were buying Ortho Evra for use as a contraceptive and that they were relying on Defendants' skill or judgment to select goods fit for that purpose.  Plaintiff, individually and through her prescribing physician, reasonably relied upon the skill, superior knowledge and judgment of Defendants.

60.     Plaintiff was prescribed, purchased and used Ortho Evra in a reasonably foreseeable and anticipated manner.

61.     Due to Defendants' wrongful conduct as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with Ortho Evra until after she used it.

62.     Contrary to the implied warranty, Ortho Evra  was not of merchantable quality and was not safe or fit for its intended uses and purposes as alleged herein.

63.     As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V:  BREACH OF EXPRESS WARRANTY

64.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

65.     Defendants expressly warranted that Ortho Evra was a safe and effective prescription contraceptive.

66.     Ortho Evra, as manufactured, marketed, and sold by Defendants did not conform to these express representations because it caused serious injury to consumers, including Plaintiff, when taken in recommended dosages and used for its anticipated purpose.

67.     As a direct and proximate result of Defendants' breach of warranty, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VI:  NEGLIGENT MISREPRESENTATION

68.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

69.     Defendants, in the course of their business, supplied Plaintiff and her physician with false information for guidance in their decision to select Ortho Evra.  The false information supplied by Defendants to Plaintiff and her physician was that Ortho Evra was safe, effective and would not adversely affect Plaintiff's health.  In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating the information to Plaintiff and her physician.

70.    Plaintiff and her physician, in good faith, justifiably relied on said information to Plaintiff's detriment.

71.    As a direct and proximate result of Defendants' negligent misrepresentation, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VII:  FRAUD

72.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

73.    Defendants made false material representations to Plaintiff, her physician and to the public that Ortho Evra was safe for its anticipated use, when in fact it is not.

74.    When Defendants made said representations, they had actual and/or constructive knowledge based upon studies, published reports and clinical experience that their representations were false in that Ortho Evra created an unreasonable risk of serious bodily injury and death to consumers.  In order to sustain profits, Defendants omitted this information in their product labeling, promotions and advertisements, and they instead labeled, promoted and advertised Ortho Evra as safe, with the intent that consumers act on such representations.

75.    In choosing to use Ortho Evra, Plaintiff and her physician reasonably relied on Defendants' false representations, and as a result, Plaintiff has suffered serious physical injury, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

16

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VIII:  NEGLIGENCE

76.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

77.     At all times herein, Defendants owed a duty to consumers, including Plaintiff, to exercise due care in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of Ortho Evra.  This duty of care encompassed a duty to ensure that Ortho Evra did not pose an unreasonable risk of harm to consumers and to ensure that consumers were aware of all risks associated with Ortho Evra use.

78.     Defendants breached their duty of care to consumers, including Plaintiff, in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled and/or sold Ortho Evra.

79.     Plaintiff's injuries and damages alleged herein were and are the direct and proximate result of Defendants' negligence, including but not limited to, the following:

      a.    Defendants' design, development, research, manufacture, testing, packaging, promotion, marketing, sale and/or distribution of Ortho Evra;

      b.    Defendants' failure to warn or instruct and/or adequately warn or adequately instruct users of Ortho Evra, including Plaintiff, of said product's dangerous and defective characteristics;

      c.    Defendants' design, development, implementation, administration, supervision and/or monitoring of clinical trials for Ortho Evra;

      d.    Defendants' promotion of Ortho Evra in an overly aggressive, deceitful and fraudulent manner, despite evidence as to the product's defective and

dangerous characteristics, i.e. its propensity to cause serious injury and/or death;

e.    Defendants' representation that Ortho Evra was safe for its intended use when, in fact, it was unsafe for its intended use;

f.    Defendants' failure to perform appropriate pre-market testing of Ortho Evra;

g.    Defendants' failure to perform appropriate post-market testing of Ortho Evra; and

h.    Defendants' failure to perform appropriate post-market surveillance of Ortho Evra.

80.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable and ordinary care.

81.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### COUNT IX:  VIOLATION OF ILLINOIS
### UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 Ill. Comp. Stat. 510/1 *et seq.*)

82.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

83.    Ortho Evra is considered "goods" as that term is defined by 810 Ill. Comp. Stat. 5/2-105.  Defendants are designers, manufacturers, promoters, marketers, developers, sellers and/or distributors of Ortho Evra .

84.    Defendants knew or should have known that Ortho Evra was unreasonably dangerous

and defective and had a propensity to cause serious and potentially life-threatening side effects. Notwithstanding the foregoing, Defendants omitted material facts concerning the use and safety of Ortho Evra in the disclosures it made to the public, the medical community and consumers, including Plaintiff.

85.    Defendants have violated the Illinois Uniform Deceptive Trade Practice Act, 815 Ill. Comp. Stat. 510/1 *et seq.*.  Defendants used deception, fraud, false promise, misrepresentation, and/or unfair practices in their packaging, labeling, distributing, marketing, promoting and selling of Ortho Evra in the state of Illinois.  Defendants concealed, suppressed, and/or omitted material facts about the safety of Ortho Evra in connection with its sale and/or advertisement in the state of Illinois.

86.    Defendants' practice of promoting Ortho Evra created and/or reinforced a false impression as to its safety and placed all Ortho Evra consumers at risk for serious injury and potentially lethal side effects.  Defendants' statements and omissions were made with the intent that Plaintiff and her prescribing physician would rely on such statements and omissions.

87.    Plaintiff purchased and used Ortho Evra for personal purposes and suffered an ascertainable loss of money as a result of Defendants' use or employment of the unlawful methods, acts or practices alleged herein.

88.    As a direct and proximate result of Defendants' unlawful practices alleged herein, Plaintiff has suffered ascertainable loss, i.e. economic loss that includes the purchases of Ortho Evra and additional out-of-pocket healthcare related costs, for which Defendants are liable to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## VI.

## DAMAGES

89.    Upon the trial of this case, it will be shown that Plaintiff was caused to sustain injuries and legal damages within the jurisdictional limits of this Honorable Court, as a direct and proximate result of Defendants' conduct.  Plaintiff will respectfully request the Court and Jury to determine the amount of the loss that Plaintiff has incurred in the past and will incur in the future and will request that judgment be entered against Defendants.

### A.    COMPENSATORY DAMAGES

90.    Plaintiff thus gives notice to Defendants that Plaintiff is suing for past, present and future damages with respect to each element set out herein.  Plaintiff pleads for pre-judgment interest and post-judgment interest as provided by law.  Plaintiff expressly reserves the right to amend this Complaint to plead an increase in damages sought herein.

91.    Plaintiff is entitled to and seeks herein the following elements of damage experienced in the past and in reasonable probability to be experienced in the future:

a.    Pain and suffering;

b.    Mental and emotional distress;

c.    Loss of enjoyment of life;

d.    Disability and impairment;

e.    Reasonably required medical expenses; and

f.    Loss of earnings and impaired earning capacity.

### B.    PUNITIVE DAMAGES

92.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

20

93.     The acts, conduct, and omissions of Defendants, as alleged herein, were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other Ortho Evra consumers for the primary purpose of increasing Defendants' profits from the sale and distribution of Ortho Evra. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants.

94.     At all times material hereto, Defendants knew or should have known that Ortho Evra was inherently more dangerous with respect to the risks of blood clots, pulmonary emboli, strokes, heart attacks and deep vein thrombosis than the contraceptive pill.

95.     At all times material hereto, Defendants attempted to misrepresent and did misrepresent facts concerning the safety of Ortho Evra. Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Plaintiff, concerning the safety of Ortho Evra.

96.     At all times material hereto, Defendants knew and recklessly disregarded the fact that Ortho Evra causes debilitating and potentially lethal side effects with greater frequency than safer alternative methods of birth control. Notwithstanding the foregoing, Defendants continued to aggressively market Ortho Evra to consumers, including Plaintiff, without disclosing the aforesaid side effects when there were safer alternative methods of birth control.

97.     Defendants knew of Ortho Evra's defective and unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture, market, distribute and sell it so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious disregard and/or negligent or reckless disregard of the foreseeable harm caused by Ortho Evra.

98.     Defendants intentionally concealed and/or recklessly failed to disclose to the public, including Plaintiff, the potentially life threatening side effects of Ortho Evra  in order to ensure continued and increased sales.

99.     As a direct and proximate result of Defendants' conscious and deliberate disregard for the rights and safety of consumers, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

100.     The aforesaid conduct of Defendants was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages to appropriately punish Defendants and deter them from similar conduct in the future.

**C.     STATUTORY DAMAGES**

101.     Defendants are liable to Plaintiff for statutory damages under the Illinois Uniform Deceptive Trade Practices Act.  Defendants' fraudulent and deceptive conduct was a violation of 815 Ill. Comp. Stat. 510/1 *et seq*., as set out above.

102.     Therefore, Plaintiff is entitled to and will seek statutory damages, plus reasonable attorneys' fees, filing fees and reasonable costs of court, in accordance with Illinois law.

**DEMAND FOR JURY TRIAL**

103.     Plaintiff hereby demands a trial by jury on all counts and as to all issues of law.

**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that Defendants be cited to appear and answer herein and that upon final trial of this cause, Plaintiff have judgment against Defendants for compensatory, punitive and/or statutory damages as awarded by the jury, plus interest, prejudgment and post-judgment, reasonable attorneys' fees, filing fees and reasonable costs

of court as provided by law, and, for such other and further legal and equitable relief as this

Honorable Court deems just and proper.

                    Respectfully submitted,


                    /s/ Kent M. Lucaccioni


Kent M. Lucaccioni
KENT M. LUCACCIONI, Ltd.
Attorney for Plaintiff, KIDDER
20 South Clark Street, Suite 1700
Chicago, IL 60603
(312) 425-0401
Atty. No. 6197689


OF COUNSEL:

Howard L. Nations
Texas State Bar No. 14823000
THE LAW OFFICES OF HOWARD L. NATIONS
4515 Yoakum Blvd.
Houston, Texas 77006-5895
(713) 807-8400
(713) 807-8423 (Facsimile)

MOTIONS TO APPEAR PRO HAC VICE PENDING